UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMIKA CHERISE
GRANT,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 4:17-cv-12819

District Judge Matthew F. Leitman

Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 14) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Tamika Cherise Grant, brings this action under 42 U.S.C. §§

405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her applications for disability income (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 11), the Commissioner's cross-motion for summary judgment (DE 14), and the administrative record (DE 8).

## A.    Background and Administrative History

Plaintiff's applications allege that her disability began on January 1, 2013 and January 1, 2014, at the ages of 44 and 45.  (R. at 149, 151.)  She lists several conditions (patellofemoral arthritis, chondromalacia of patella,[1] and degenerative joint disease (DJD)) that limit her ability to work.  (R. at 174.)  Her applications were denied on January 12, 2015.  (R. at 62-93.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 97-98.)  ALJ Roy E. LaRoche, Jr., held a hearing on March 23, 2016, at which Plaintiff and a vocational expert (VE), Don K. Harrison, testified.  (R. at 25-61.)  He issued an opinion on May 19, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-24.)  On July 13, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5, 8.)  Thus, ALJ LaRoche's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 25, 2017.  (DE 1.)

## B.    Plaintiff's Medical History

---

[1] Chondromalacia pate'llae is "a softening of the articular cartilage of the patella; may cause patellalgia."  Stedman's Medical Dictionary 171930 (Nov. 2014).

The administrative record contains approximately 670 pages of medical records, all of which was available to the ALJ at the time of his decision. (R. at 24, 218-887 [Exhibits 1F – 18F].) They will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. (R. at 14.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees (status-post right knee arthroplasty and left knee arthroscopy), right foot hallux valgus and degenerative disc disease (DDD) of the lumbar spine. (*Id*. at 14-16.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 16.) Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except she requires the ability to alternate between sitting and standing but not more frequently than every 30 minutes. No operation of foot controls with the bilateral

_____

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

> lower extremities [*i.e.*, *exertional limitations*]; never climb ladders,
> ropes or scaffolds; occasionally climb ramps or stairs, balance, stoop,
> crouch, kneel and crawl [*i.e.*, *postural limitations*]; no more than
> occasional exposure to extreme cold; and no exposure to vibration,
> moving mechanical parts or unprotected heights [*i.e.*, *environmental
> limitations*].

(*Id*. at 16-19.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (R. at 19.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ found that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(R. at 19-20.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from January 1, 2013, through the

date of the decision.  (R. at 20.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

4

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff sets forth four arguments:

1.    The ALJ failed to comply with 20 C.F.R. § 404. 1527 by failing to accord adequate weight to the opinion of the Plaintiff's treating physicians.

2.    The substantial evidence of record does not support a finding that Plaintiff can perform sustained work activities.

3.    The ALJ failed to consider that the Plaintiff's persistent efforts to obtain pain relief enhanced his credibility as set forth in SSR 96-7p.

4.    The ALJ failed to properly assess the Plaintiff's mental RFC as required by SSR 96-8p and SSR 85-15.

(DE 11 at 3, 10-18.)

The Commissioner argues that Plaintiff "cannot sustain her burden of

establishing that the ALJ committed reversible error when he assessed Plaintiff's

RFC."  (DE 13 at 3, 5-27.)

### 1.    Physical RFC assessment

Plaintiff's first three statements of error concern her physical impairments.

At Step 2, the ALJ determined that Plaintiff's severe impairments included

osteoarthritis of the bilateral knees (status-post right knee arthroplasty and left knee

arthroscropy), right foot hallux valgus, and DJD of the lumbar spine, but the ALJ

6

also determined that Plaintiff's eczema was non-severe.  (R. at 14.)  At Step 3, the

ALJ determined that Plaintiff's knee impairments and DDD did not meet Listings

1.02A and 1.04.  (R. at 16.)  The ALJ then determined that Plaintiff had the RFC to

perform light work, with additional exertional, postural, and environmental

limitations.  (R. at 16.)

### a.      Opinion evidence generally

ALJ LaRoche stated that he "considered opinion evidence in accordance

with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p,

96-6p and 06-3p."  (R. at 17.)  As expressed in her 1st statement of error, Plaintiff

disagrees; she claims that the ALJ did not comply with 20 C.F.R. §§ 404.1527,

416.927 by "failing to accord adequate weight to the opinion of the Plaintiff's

treating physicians."  (DE 11 at 10-12.)

The SSA "will always give good reasons in [its] notice of determination or

decision for the weight [it] give[s] [a Plaintiff's] treating source's medical

opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "[T]he notice of the

determination or decision [regarding a denial of benefits] must contain specific

reasons for the weight given to the treating source's medical opinion, supported by

the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at

*5 (S.S.A. July 2, 1996).

### b.     The ALJ's treatment of physical opinion evidence

As pertinent to this statement of error, the ALJ:

(i)     cited the December 2, 2015 letter of "treating source" Nicolas
Marsheh, M.D. (R. at 815) and the December 7, 2015 letter of
Plaintiff's neurologist, Curt Wimmer, M.D. (R. at 816), and
without making a specific assignment of weight, stated that
neither "noted any functional limitations" and that "the issue of
disability is one that is reserved to the commissioner."

(ii)    assigned "little weight" to the September 4, 2014 office visit
notes of Fremont L. Scott, D.O. (R. at 287), as it appeared to
"refer to an inability to perform the claimant's past work and
expected to be for a restricted period."

(iii)   assigned "little weight" to the September 8, 2014 disability
parking placard application signed by Roger Harris, D.O. (R. at
265) on the basis that "it was for a defined period."

(R. at 18.)  Having identified Drs. Marsheh, Wimmer, Scott and Harris,

respectively, as "a treating source," "claimant's neurologist," "claimant's

orthopedic surgeon," and "claimant's physician," it is clear the ALJ discounted

these opinions after he considered the examining relationship and treatment

relationship factors, and, at least as to Drs. Wimmer and Scott, the specialization

factor.  20 C.F.R. §§ 404.1527(c)(1),(2),(5), 416.927(c)(1),(2),(5).  Moreover, as

Plaintiff at least partially acknowledges, "[a] doctor's conclusion that a patient is

disabled from all work may be considered . . . , but could 'never be entitled to

controlling weight or given special significance' because it may invade the

ultimate disability issue reserved to the Commissioner." *Gentry v. Commissioner*

*of Social Sec.*, 741 F.3d 708, 727 (6th Cir. 2014) (quoting SSR 96-5P, 1996 WL

374183 at *5 (S.S.A. July 2, 1996)); (DE 11 at 12).  *See also* 20 C.F.R. §§

404.1527(d), 416.927(d) ("Medical source opinions on issues reserved to the

Commissioner.").

### c.   Discussion

Nonetheless, with scant analysis, Plaintiff directs the Court's attention to the

following pieces of evidence, which she contends are consistent with the opinions

of Drs. Marsheh, Wimmer and Scott:

- A September 26, 2015 MRI of the lumbar spine, which found, *inter alia*, "diffuse posterior disc bulging" (R. at 793-794)

- Dr. Scott's July 21, 2014 orthopedic progress notes state that "[p]lain x-rays suggested that she had patellofemoral arthrosis with loss of cartilaginous surface at the patella and distal femoral sulcus."  (R. at 273.)

- At the August 11, 2014 visit for left knee MRI follow-up, Dr. Scott noted "evidence of stage 3 to 4 chondromalacia with some loose material floating in the joint area."  (R. at 276.)

- At the October 2, 2014 visit for knee pain (post-knee arthroscopy and post-physical therapy), Dr. Scott noted that the "significant stage 4 arthropathy," shown in previous x-rays, "was confirmed on the left with the surgery."  Notes from this same office visit indicate that Plaintiff "will contact our office to make arrangements to have her procedure performed of patellofemoral arthroplasty."  (R. at 290; *see also* R. at 278-286.)

- On November 16, 2015, Plaintiff received a lumbar interlaminar epidural steroid injection, and he was assessed with lumbar DDD, lumbar spinal stenosis, lumbar radiculopathy, and low back pain.  (R. at 784.)

(DE 11 at 11-12.)  Still, as the Commissioner points out, "[t]he mere diagnosis of [a condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  (*See* DE 14 at 12.)

More to the point, Plaintiff arguably contends that the ALJ should have adopted Drs. Marsheh, Wimmer and Scott's opinions on the bases of the supportability and/or consistency factors.  20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).  However, it is not this Court's job to re-weigh the evidence. *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).  In this case, the factors considered by the ALJ in weighing Drs. Marsheh, Wimmer, Scott and Harris's medical opinions are "clear to [this] subsequent reviewer[]" and the ALJ gave good and clear reasons for his treatment of this opinion evidence. SSR 96-2P.  Pointing out that there is evidence in the record to support a contrary conclusion will not suffice, as the Court defers to an ALJ's findings that are supported by substantial evidence "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at

406 (internal quotations omitted).  As such, the ALJ's RFC determination of light

work - with additional exertional, postural, and environmental limitations - should

stand.

### 2.    Credibility

#### a.    Sustained physical work activity

Plaintiff's 2nd statement of error is that substantial evidence "does not

support a finding that Plaintiff can perform sustained work activities."  (DE 11 at

12-15.)  Here, as Plaintiff points out, "[a] 'regular and continuing basis' means 8

hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8P, 1996

WL 374184 at *1 (S.S.A. July 2, 1996).  She also directs the Court's attention to

the differences between "sedentary work" and "light work," as described in SSR

83-10.  (DE 11 at 13-14.)

Plaintiff claims that, "[d]espite undergoing physical therapy, epidural steroid

injections and faithfully taking pain medication," she "continues to constantly

experience pain in her knees and back."  (DE 11 at 14.)  In support of this

statement, Plaintiff cites:

- Dr. Scott's May 3, 2014 progress notes - which precede
  Plaintiff's August 20, 2014 surgery – state, among other things,
  that Plaintiff has pain in her left and right knees and that her
  symptoms include swelling.  Also, Plaintiff "cannot bend and
  straighten the knee fully."  (R. at 267; *see also* R. at 278-286.)

- Her October 17, 2014 function report, which post-dates her
  surgery, notes that she is limited in her ability to work due to

right and left knee problems, including "swelling, pain and not being able to stand or walk or sit with knees bent[.]"  Plaintiff also noted that she "can only sit with knees straight[,]" and that her "knees are very we[a]k."  (R. at 182.)

- Thomas Nabity, M.D.'s September 22, 2015 notes, which state, in pertinent part, that "the pain is achy and daily requires use of an assist device, causes her to limp and is exacerbating her back pain."  (R. at 795.)

(*Id*.)  Plaintiff argues, in conclusory fashion, that an individual, such as herself, "who regularly experiences difficulty walking without an assistive device [and] stiffness due to swollen legs," would not be able to perform light or sedentary work.  (DE 11 at 14.)

This statement of error is unavailing, and its foundation is unclear.  To the extent this statement of error challenges the ALJ's determination that Plaintiff is exertionally limited to "light work," with some further exertional limitations, her references to SSR 96-8p and SSR 83-10 and citations to "pain in her knees and back," "difficulty walking without an assistive device," and "stiffness due to swollen legs," *etc.*, do not necessarily equate with being unable to perform the lifting, carrying, standing, walking, sitting, pushing, and pulling requirements of light work.  20 C.F.R. §§ 404.1567(b), 416.967(b).  (DE 11 at 13-14.)  And, she fails to convincingly explain why the Court should reach such an emphatic conclusion.  To the extent this statement of error challenges the ALJ's credibility determination, Plaintiff's argument is undeveloped, as it does not explain how ALJ

LaRoche's May 19, 2016 decision was errant under 20 C.F.R. §§ 404.1529, 416.929 (effective June 13, 2011 to March 26, 2017).  Finally, to the extent this statement of error is based upon the ALJ's failure to order a consultative examination under "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 11 (2000) (*see* DE 11 at 14-15), the SSA has *discretion* as to whether to do so.  *See* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added).  Plaintiff fails to establish that the existing medical sources within the administrative record were unable or failed to provide sufficient medical information for the ALJ to make a determination as to her physical capabilities, even if he afforded little or no weight to specific opinions by Drs. Marsheh, Wimmer, Scott and Harris.

### b.    Credibility

Plaintiff's 3rd statement of error challenges the ALJ's credibility finding. (DE 11 at 15-16.)  ALJ LaRoche stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p."  (R. at 17.)  Ultimately, the ALJ

concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence."  (*Id*.)

"In determining whether you are disabled," the SSA will "consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a).  When "[e]valuating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work[,]" the SSA will consider "objective medical evidence" and "other evidence."  20 C.F.R. §§ 404.1529(c)(2),(3), 416.929(c)(2),(3).  The SSA will consider "[f]actors relevant to your symptoms," including:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

> (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff claims that ALJ LaRoche did not consider that her "persistent efforts to obtain pain relief enhanced h[er] credibility as set forth in SSR 96-7p." (DE 11 at 15.)  As Plaintiff points out,

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7P, 1996 WL 374186, *7 (S.S.A. July 2, 1996) (footnote omitted).  *See also* SSR 16-3P, 2017 WL 5180304, *9 (S.S.A. Oct. 25, 2017) ("*Persistent* attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

15

Here, Plaintiff cites a multitude of records to document her chondromalacia, including, but not limited to:  (a) her August 20, 2014 left knee arthroscopy (R. at 278-286); (b) Dr. Nabity's October 27, 2015 notes about her December 2014 right knee replacement, which provided a "less than optimal result," (R. at 787); and, (c) a November 7, 2015 MRI of the right knee (R. at 702).  (DE 11 at 15-16.)  Plaintiff also refers to a November 16, 2015 lumbar epidurogram, which followed an MRI that revealed "multi level disc disease . . . ."  (DE 11 at 16, R. at 786-787.)

However, even if "[t]he record establishes not only chronic knee and back pain," but also "frequent and consistent efforts by Plaintiff to seek solutions to these chronic impairments[,]" (DE 11 at 16), the ALJ's opinion acknowledges:

    i.      Plaintiff's testimony that "she had a right knee replacement and is recommended for replacement of the left knee."

    i.      Plaintiff's testimony that "she took medication and had injections for lower back pain that did not provide relief."

    ii.     "an arthroscopic procedure, performed on her left knee,"

    iii.    "partial right knee arthroplasty[,]" which the Court assumes to be a reference to the December 3, 2014 "right—partial knee replacement."

    iv.    a November 2015 "left [sic] knee MRI [that] showed medical meniscus tear,"

(R. at 17-19; *see also* R. at 35-37, 278-286, 529-532, 545-546, 702.)  Thus, it is clear that the ALJ took these forms of "treatment modalities" or this "variety of treatments" into consideration.  (*See* SSR 96-7p, SSR 16-3p.)  Stated otherwise,

these acknowledgements by the ALJ reflect his consideration of "[t]reatment, other than medication," that Plaintiff receives or received "for relief of . . . pain or other symptoms[.]"  20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).

Moreover, the Court notes that, at the hearing, Plaintiff testified that her pain medication causes drowsiness, she takes this medication every six to eight hours, and it helps relieve her pain "for a short period of time[.]"  (R. at 40, 52-53.) Plaintiff also testified that she had a shot in her left knee "to give moisture in between the bones, so it wouldn't be so painful by it being bone to bone."  (R. at 41.)  Plaintiff also testified about Dr. Wimmer's recommendations for back treatment and Dr. Fremont's direction to use a cane.  (R. at 44-45.)  Additionally, Plaintiff testified that her most comfortable position when she is in pain is "to sit with [her] legs straight out . . . [,]" such as supporting her legs with a pillow and resting them on an ottoman.  (R. at 51-52.)  Not only was ALJ LaRoche present at the March 23, 2016 hearing (R. at 25, 27), his May 19, 2016 decision notes that "[s]he stated she used a walker after surgery but transitioned to a cane[,]" (R. at 17).  Thus, it is clear that the ALJ was informed by Plaintiff's medication and the measures she uses to alleviate or relieve her pain. 20 C.F.R. §§ 404.1529(c)(3)(iv),(vi), 416.929(c)(3)(iv),(vi).

Plaintiff has not shown that the ALJ was errant in his credibility determination.  Therefore, it should stand.

### 3.     The absence of mental RFC limitations

Plaintiff's 4th statement of error concerns her mental impairment(s).  At Step 2, the ALJ determined that Plaintiff's anxiety/post-traumatic stress disorder "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  (R. at 15.)  In particular, the ALJ cited:

- Roger S. Harris, D.O.'s notes from Plaintiff's March 3, 2014 annual examination, which contain objective psychiatric notes that Plaintiff's behavior and judgment were normal (R. at 223)

- Dr. Harris's notes from "later that year" that "found her alert and fully oriented[,]" which observation by the ALJ appears to refer to Dr. Harris's March 2014, May 2014, July 2014, September 2014 and October 2014 notations that Plaintiff was "oriented to person, place, and time."  (*See*, *e.g.*, R. at 230, 234, 252, 253, 471, 476, 481, 836, 838, 842-846.)

- Henry Ford Hospital May 14-15, 2015 notes, which reflect a history of anxiety but also a notation that her behavior was normal (R. at 850, 854)

- Nicolas Marsheh, M.D.'s June 3, 2015 notes, which reflect a diagnosis of anxiety and a refill of her Xanax prescription but which also reflect that Plaintiff was alert and cooperative and further reflect "normal speech/language," and "appropriate judgment and insight" (R. at 755-756)

- Eastwood Clinics June 1, 2015 intake assessment form, which notes that Plaintiff "wants to be able to control her anxiety[,]" and contains a diagnosis of "anxiety disorder NOS [not otherwise specified][,]" but also reflects largely unremarkable mental status observations (R. at 830-833)

- Psychologist W. Martin, Ph.D.'s August 19, 2015 and/or October 13, 2015 notes (R. at 822-829 [Ex. 16F])[3]

- Sami Asmar, M.D.'s July 27, 2015 notes, which contain an anxiety diagnosis and a prescription of Diazepam (R. at 750)

- Dr. Marsheh's progress notes for "the rest of the year . . . [,]" presumably those from August, October and November 2015 (R. at 737-747 [Ex. 11F])

- Dr. Marsheh's February 1, 2016 notes, which reflect that Plaintiff was "grossly oriented to person, place and time," her mood was normal, and her affect was appropriate (R. at 779 [Ex. 12F])

- Dr. Martin's March 8, 2016 notes, which appear to document that Plaintiff was alert and oriented times 3 (AAOX3) and which also document good attention and normal mood (R. at 819 [Ex. 16F])

(*Id.*)  Then, with express citations to Plaintiff's function report, the ALJ observed that Plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence or pace (CPP), and "no episodes of decompensation which have been of extended duration[,]" and found that Plaintiff's "medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area[.]"  (R. at 15-16, 182-189.)  Consistently, the ALJ's RFC assessment does not include any mental health

---

[3] The ALJ refers to these records of Dr. Martin without a date.  To complicate matters, the pages for these two visits appear to be out of order.  Therefore, it is difficult to determine to which notes the ALJ refers.  (*See* R. at 15, 822-829.)

limitations, such as those related to understanding and memory, sustained concentration and persistence, social interaction or adaptation.  (*Id*.)

Within this final statement of error, Plaintiff argues that the ALJ did not properly assess her mental RFC, as required by SSR 96-8p and SSR 85-15, because the "RFC assessment does not consider the impact of [her mental health] impairment on functional ability . . . ."  (DE 11 at 16.)  "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8P, 1996 WL 374184, *5 (S.S.A. July 2, 1996).  As noted in detail above, the ALJ did so here, albeit within his Step 2 discussion.  That this analysis occurred at Step 2 does not mean that the ALJ did not consider these mental health impairments in forming Plaintiff's RFC.  "'[N]o purpose would be served' and no different outcome would result by remanding for the ALJ to revisit the RFC only to restate its analysis in step two."  *Thomas v. Colvin*, No. 0:14-CV-129-JMH, 2015 WL 1281701, at *4 (E.D. Ky. Mar. 20, 2015) (quoting *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507 (6th Cir. 2006)).

More to the point, Plaintiff seems to be challenging the ALJ's failure to express her abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision,

co-workers and work situations; and deal with changes in a routine work setting."

(*Id.*, at *6.)  In this regard, Plaintiff correctly notes this Court's direction that:

> . . . although the ALJ was arguably not required to *incorporate* mild limitations into plaintiff's RFC, she was required to *consider* those limitations in formulating plaintiff's RFC, and it is not evident from the ALJ's opinion that she did so. Indeed, the ALJ's RFC assessment is silent as to plaintiff's mental limitations. Accordingly, because it is at best unclear whether the ALJ considered plaintiff's mental impairment in determining her RFC, the court cannot conclude that the ALJ's finding is supported by substantial evidence.

*Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015) (O'Meara, J., *adopting report and recommendation of* Hluchaniuk, M.J.).  (DE 11 at 17.)

As noted above, ALJ LaRoche considered Plaintiff's psychologist's records at Step 2.  (R. at 15, 817-820.)  Then, within the RFC determination, ALJ LaRoche assigned "little weight" to any of the Global Assessment of Functioning (GAF) scores.  (R. at 18-19.)[4]  Thus, although to a limited extent, the ALJ expressly

---

[4] The ALJ did not provide record citations for Plaintiff's GAF scores, although the Court notes a GAF of 45 was assessed at the June 1, 2015 intake assessment, and a GAF of 50 was assessed on October 13, 2015.  (R. at 18-19, 832.)  "GAF scores ranging from 41 to 50 indicate serious symptoms '(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)' or any serious impairment in social or occupational functioning '(e.g., no friends, unable to keep a job).'"  *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 423 n.17 (6th Cir. 2013) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2000) (DSM–IV–TR [TM]).).  Nonetheless, the Sixth Circuit has noted that "the Commissioner has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment

discussed Plaintiff's mental health within the RFC determination.  However, even

if, for the sake of argument, the ALJ's Step 2 and RFC assessment mental health

discussions were insufficient under *Biehl*, the Commissioner quotes case law from

this Court, which pertinently explains that . . .

> . . . courts in this district have found that "mild limitations do
> not require incorporation into an RFC assessment."  (See
> docket no. 18 at 26-27) (citing *Burrell v. Comm'r of Soc. Sec.*,
> No. 14-14529, 2016 WL 1165994, at *10 (E.D. Mich. Feb. 29,
> 2016)), *report and recommendation adopted*, No. 14-14529,
> 2016 WL 1161548 (E.D. Mich. Mar. 23, 2016) [(Parker, J.)]
> and *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *14
> (E.D. Mich. Feb. 10, 2012), *report and recommendation
> adopted*, No. 11-CV-10896, 2012 WL 680392 (E.D. Mich.
> Mar. 1, 2012) [(Steeh, J.)].  Courts in this district have also
> found, however, that an ALJ's failure to explain how a
> claimant's mild psychological limitations affect the RFC
> assessment may constitute reversible error where the ALJ
> makes no mention of the claimant's mental impairment in the
> RFC analysis.  *See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-
> 10417, 2015 WL 871617, at *5-7 (E.D. Mich. Feb. 27, 2015)
> [(Goldsmith, J.)]; *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293,
> 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015).

*Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6

(E.D. Mich. July 24, 2017) (Majzoub, M.J.), *report and recommendation*

---

Functioning] scores have no direct correlation to the severity requirements of the
mental disorders listings. Accordingly, we have affirmed denials of disability
benefits where applicants had Global Assessment Functioning scores of 50 or
lower."  *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006).

*adopted*, No. 16-CV-11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017)

(Steeh, J.).  (DE 14 at 23-24.)[5]

Here, as in *Shamsud-Din*, Plaintiff "has not met her burden . . . ."  *Shamsud-Din*, 2017 WL 3574694, *7.  According to Plaintiff, the record "continually provides that [she] has significant difficulty controlling her anxiety and panic attacks."  (DE 11 at 17.)  However, in doing so, she provides only one medical record citation – the June 1, 2015 intake assessment form, which states, *inter alia*, that "[t]he client has racing heart beat at times[,]" and "[t]he client does not sleep throughout the night."  (R. at 830.)[6]  The only other record cite within this statement of error is to her testimony about the efficacy of her medication and its side effect(s).  (DE 11 at 17, R. at 52; *see also* R. at 40, 46.)  Plaintiff's statement that, given "this medical history," the "mental demands of substantially gainful

---

[5] *See also Ashby v. Comm'r of Soc. Sec.*, No. 16-CV-11829, 2017 WL 3725476, at *3 (E.D. Mich. Aug. 30, 2017) (Ludington, J., *adopting report and recommendation of* Patti, M.J.) ("Even *Biehl*, the case Ashby relies upon, holds that the ALJ is required only to *consider* mild mental limitations when formulating the RFC, not that the existence of those limitations are dispositive. . . . . Because the ALJ did consider Ashby's mental limitations in formulating the RFC and because that RFC is supported by substantial evidence, the second objection will be overruled.").

[6] Elsewhere in her brief, Plaintiff refers to "anxiety and panic attacks," collectively citing the Eastwood Clinics records which make up the 17 pages of Exhibit 16F. (*See* DE 11 at 9, R. at 817-833.)  Doing so within in a single sentence in her "statement of facts" does not automatically operate to more broadly support her statement of error, particularly where she has not made the effort to tie more than a single page of it into her argument.

work activity would be arduous[,] if possible at all[,]" (DE 11 at 17), is not convincing.  Beyond the claim about "her poor sleep hygiene" negatively effecting her work performance, Plaintiff proposes that "changes in work setting" and "interactions with others" would "*surely* contribute to her being off task[] and overwhelmed[,]" and contends that the ALJ did not seriously entertain these considerations.  (DE 11 at 17-18 (emphasis added).)  Without any citation to the record for this conclusory statement, it should be deemed undeveloped, and the Undersigned is unwilling to leap to such a certainty.

Plaintiff not having shown error in the ALJ's consideration of her anxiety/post-traumatic stress disorder – either at Step 2 or within the RFC determination – the absence of mental RFC limitations should stand.

### F.    Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 23, 2018          s/*Anthony P. Patti*
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on August 23, 2018, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti